JTW: 03.10.21



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2021 JUL 19 AM 11:05

BY_____ DEPUTY

| | | | |
|---|---|---|---|
| Patricia McLane<br>Assistant United States Attorney<br>Patricia.McLane@usdoj.gov | Mailing Address:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | Office Location:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | DIRECT: 410-209-4642<br>MAIN: 410-209-4800<br>FAX: 410-962-3124 |

March 11, 2021

Stephen B. Mercer, Esq.
RaquinMercer LLC
5906 Hubbard Drive
Rockville, MD 20852

    Re:    <u>United States v. Karon Foster</u>,
            Criminal No. SAG-19-0486

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Karon Foster (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **March 11, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

    1.    The Defendant agrees to plead guilty to Count 1, Count 2, and Count 6 of the Fourth Superseding Indictment, which charge the Defendant with (1) conspiracy to participate in racketeering activity in violation of 18 U.S.C. § 1962(d); (2) carjacking conspiracy in violation of 18 U.S.C. § 371; and (3) aiding and abetting a carjacking resulting in death in violation of 18 U.S.C. § 2119(3). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

#### Count 1 (RICO Conspiracy)

    a.    That there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

    b.    That the Defendant knowingly and willfully became a member of that agreement; and

c.   That the Defendant or another member of the conspiracy agreed to commit two racketeering acts, as that term is defined in 18 U.S.C. § 1961(1).

### Count 2 (Carjacking Conspiracy)

a.   That, on or about the time alleged in the Fourth Superseding Indictment, in the District of Maryland, the Defendant agreed with at least one other person to commit a carjacking;

b.   That the Defendant knowingly and willfully became a member of the conspiracy; and

c.   That one of the members of the conspiracy committed at least one overt act to further some objective of the conspiracy.

### Count 6 (Aiding and Abetting a Carjacking Resulting in Death)

a.   That, on or about June 12, 2019, in the District of Maryland, another person took a motor vehicle from the person or presence of another;

b.   That the person took the vehicle by using force and violence or by acting in an intimidating manner;

c.   That the person acted with intent to cause death or serious bodily harm;

d.   That the motor vehicle had previously been transported, shipped, or received in interstate or foreign commerce;

e.   That death resulted from the person's actions; and

f.   That the Defendant knowingly associated himself in some way with that offense, and he participated in that offense by doing some act to help make that offense succeed.

## Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1962(d) | N/A | Life | 5 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 371 | N/A | 5 years | 3 years | $250,000 | $100 |
| 6 | 18 U.S.C. § 2119(3)<br><br>18 U.S.C. § 2 | N/A | Life imprisonment or Death | 3 years | $250,000 | $100 |

   a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum

schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

Rev. August 2018

      f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

**Count 1 (RICO Conspiracy)**

Rev. August 2018

5

  a. This Office and the Defendant further agree that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2E1.1, the base offense level is the offense level applicable to the underlying racketeering activity.[1] The underlying racketeering activities are murder, attempted murder, carjacking, and armed robbery:

  i. Murder (June 12, 2019): Pursuant to U.S.S.G. § 2A1.1, the base offense level is **43** because the offense involves first degree murder. The government believes a 2-level increase applies pursuant to U.S.S.G. § 3B1.1(c) because the Defendant was an organizer, leader, manager, or supervisor; the defendant, however, disputes this increase. A 2-level increase applies pursuant to U.S.S.G. § 3B1.4 because the Defendant used or attempted to use a person less than 18 years of age to commit the offense. The adjusted offense level is either **47** ~~or 45~~ **45** or **43**; however, the defendant disputes this increase.

  ii. Murder (July 23, 2019): Pursuant to U.S.S.G. § 2A1.1, the base offense level is **43** because the offense involves first degree murder.

  iii. Murder (August 1, 2019): Pursuant to U.S.S.G. § 2A1.1, the base offense level is **43** because the offense involves first degree murder.

  iv. Attempted Murder (August 8, 2019): Pursuant to U.S.S.G. § 2A1.1, the base offense level is **43** because the offense involves first degree murder. A 3-level decrease applies because the offense was an attempt. The adjusted offense level is **40**.

  v. Carjackings: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for each carjacking is **20**. A **5**-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because a firearm was brandished. A **2**-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(5) because the offense involved carjacking. The adjusted offense level is **27**.

  vi. Armed Robbery (August 1, 2019): Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for the armed robbery is **20**. A **5**-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because a firearm was brandished. A **2**-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(4) because a person was restrained to facilitate commission of the offense of to facilitate escape. The adjusted offense level is **27**.

  b. Grouping: Pursuant to U.S.S.G. § 2E1.1, application note 1, the offense level for each predicate crime must take into account the grouping rules under U.S.S.G. Chapter Three. None of the predicate crimes group under U.S.S.G. § 3D1.2(d) because offenses that fall under the § 2A1.1 and § 2B3.1 guidelines are excluded from grouping. Therefore, pursuant to U.S.S.G. § 3D1.3(b), the murders and attempted murder equal four Groups, and the offense levels for each Group is **47** or **45** (June 12 murder), **43** (remaining murders), and **40** (attempted murder). Pursuant to U.S.S.G. § 3D1.4(c), the Groups for the carjackings and armed robbery are disregarded because each of them are 9 or more levels less serious than the Group with the highest offense level.

---

[1] Pursuant to U.S.S.G. § 2E1.1 note 2, if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is used.

Rev. August 2018

c. <u>Combined Offense Level</u>: Pursuant to U.S.S.G. § 3D1.4, each Group receives 1.0 Unit because they are equally serious. Because this results in 4.0 total Units, a 4-level increase applies. The combined offense level is either 51 or 49, or 47.

### Count 2 (Carjacking Conspiracy)

d. This Office and the Defendant further agree that, pursuant to § 2X1.1(a), the guidelines under U.S.S.G. § 2B3.1 apply because the substantive offense was carjacking. In turn, pursuant to the cross-reference in U.S.S.G. § 2B3.1(c)(1), the guidelines under U.S.S.G. § 2A1.1 apply because a victim was murdered. Pursuant to U.S.S.G. § 2A1.1(a), the base offense level is **43**.

e. However, pursuant to U.S.S.G. § 3D1.2(b) this offense groups with Count 1 because it involves the same victims and two or more acts connected by a common criminal objective or constituting part of a common scheme or plan.

### Count 6 (Aiding and Abetting a Carjacking Resulting in Death)

f. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 10 is **20**. A 5-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because a firearm was brandished. A 2-level increase applies pursuant to U.S.S.G. § 2B3.1(b)(5) because the offense involved carjacking. The adjusted offense level is **27**.

g. However, pursuant to U.S.S.G. § 3D1.2(b) this offense groups with Count 1 because it involves the same victims and two or more acts connected by a common criminal objective or constituting part of a common scheme or plan.

### <u>Combined Offense Level</u>

h. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 3D1.4, the combined offense level for these offenses is either 51 or 49, or 47.

i. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

Rev. August 2018

7.      The parties agree to the Defendant's criminal history as determined by the Pre-Plea Criminal History Report dated January 3, 2020. Accordingly, the Defendant's criminal history category is **III**.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.\

## Rule 11 (c) (1) (C) Plea

9.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between **360 and 480 months of imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

10.     At the time of sentencing, this Office will recommend a sentence within the agreed upon range of **360 and 480 months of imprisonment**. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Fourth Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

Rev. August 2018

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

    i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

    ii. This Office reserves the right to appeal any sentence below a statutory minimum.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: (1) a .40 caliber Smith & Wesson handgun, model SD40VE, with serial number HEY3709 and 15 rounds of .40 caliber Winchester ammunition; and (2) a .40 caliber Smith & Wesson pistol, model M&P shield, with serial number HWF8698.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of

Rev. August 2018

the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

19. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw the plea. If the Defendant persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, the Defendant's attorney, nor the Court can make a binding prediction or promise that the

Court will accept this Agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

*Digitally signed by PATRICIA MCLANE*
*Date: 2021.05.24 12:59:31 -04'00'*

Patricia McLane
Brandon Moore
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-11-21
Date

Karon Foster

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3-11-21
Date

Stephen B. Mercer, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### I. Count 1 (RICO Conspiracy)

From a time unknown, but not later than April 2019, and continuing through the present date, the Defendant, Karon Foster, along with Rashaud Nesmith, Malik Evans, Demonte Kellum, and others, agreed to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity throughout Baltimore, Maryland. The enterprise committed a series of armed robberies, attempted armed robberies, and carjackings, some of which resulted in the murder or non-fatal shooting of the victims. The members affected commerce by, among other things, pawning stolen goods, stealing cars that were manufactured outside of Maryland, and using a stolen car to travel out of state. All of the acts are punishable by imprisonment for more than one year under Maryland law.

The Defendant was a member of the enterprise. The members used at least three different firearms to commit the acts. And they shared the proceeds of their exploits, with the Defendant being responsible for pawning any items recovered from the stolen cars and victims. The members, among other things, promoted the enterprise and its activities on social media; concealed the acts of the enterprise by hiding, destroying, or disposing evidence; and generated profits for themselves and the enterprise. The members also used the carjacked cars to commit other carjackings and acts of violence.

At least two or more members of the enterprise agreed to commit the following racketeering acts in furtherance of the enterprise, which are linked together through cell-site information, ballistic evidence, witness testimony, and the contents of the conspirators' cellphones and social media accounts:

- the April 19, 2019 carjacking of J.B.'s BMW 335CI in the 1600 block of Homestead Street in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the June 9, 2019 carjacking of D.G.'s Honda Accord in the 5600 block of Haddon Avenue in Baltimore, during which two members of the conspiracy brandished firearms;

- the June 12, 2019 carjacking of S.A.'s Acura MDX in the 4400 block of Franconia Avenue in Baltimore, during which a member of the conspiracy discharged a firearm, striking and killing Taven Lowther;

- the June 12, 2019 carjacking of M.A.'s Infiniti M35X in the 4700 block of Wakefield Avenue in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the June 12, 2019 armed robbery of R.J. in the 5400 block of Moores Run Drive in Baltimore, during which a member of the conspiracy brandished a firearm;

- the July 11, 2019 carjacking of G.C.'s Acura TLX in the 5100 block of Dickey Hill Road in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the July 12, 2019 carjacking of T.P.'s Nissan Altima in the 5700 block Radecke Avenue in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the July 16, 2019 carjacking of J.M.'s Honda Accord in the 5000 block of Dickey Hill Road, during which at least one member of the conspiracy brandished firearms;

- the July 23, 2019 attempted armed robbery of Devon Chavis in the 4900 block of Goodnow Road in Baltimore, during which one member of the conspiracy discharged a firearm, striking and killing Chavis;

- the July 29, 2019 carjacking of M.W.'s Infiniti Q50 in the 5300 block of Todd Avenue in Baltimore, during which at least one member of the conspiracy brandished firearms;

- the August 1, 2019 armed robbery of Y.R. at 2606 Talbot Road in Baltimore, during which members of the conspiracy brandished firearms and restrained Y.R. by tying him up;

- the August 1, 2019 attempted armed robbery of Kendrick Sharpe in the 5300 block of Fernpark Avenue in Baltimore, during which members of the conspiracy discharged firearms, striking and killing Sharpe; and

- the August 8, 2019 armed robbery of I.C. in the 5600 block of Summerfield Avenue in Baltimore, during which members of the conspiracy discharged firearms, striking I.C., who sustained life-threatening bodily injuries requiring hospitalization for almost two weeks and time on life support.

To further the enterprise, the Defendant participated in all of these events (including the June 12, 2019 carjacking resulting in the death of Taven Lowther described below) except the April 19, 2019 carjacking of J.B.'s BMW 335CI.

The Defendant agrees that he knowingly and willfully became a member of the agreement to participate in the enterprise and that he or another member of the conspiracy agreed to commit two racketeering acts, as that term is defined in 18 U.S.C. § 1961(1). The Defendant also agrees that it was reasonably foreseeable to him that a victim could be murdered or shot during the course of the conspiracy. The Defendant also admits that it was reasonably foreseeable that his co-conspirators would commit the remaining robbery that he did not participate in.

Rev. August 2018

13

## II.  Carjacking Conspiracy (Count 2)

From a time unknown, but not later than February 2019, and continuing through August 2020, the Defendant, along with Nesmith, Jamai Wells, Daniel Williams, Evans, Kellum and others, conspired to commit multiple armed carjackings throughout Baltimore, Maryland. The members of the conspiracy used at least three different firearms to commit the acts. They shared the proceeds of their exploits, with the Defendant being responsible for pawning any items recovered from the stolen cars. The members also used the carjacked cars to commit other carjackings and acts of violence.

The members of the conspiracy committed the following overt acts to further the conspiracy (all of which are included in the acts listed under Count 1, are explained in more detail in the section above, and would be proven using the same evidence):

- the June 9, 2019 carjacking of D.G.'s Honda Accord;

- the June 12, 2019 carjacking of S.A.'s Acura MDX (resulting in the death of Taven Lowther);

- the June 12, 2019 carjacking of M.A.'s Infiniti M35X;

- the July 11, 2019 carjacking of G.C.'s Acura TLX;

- the July 12, 2019 carjacking of T.P.'s Nissan Altima;

- the July 16, 2019 carjacking of J.M.'s Honda Accord; and

- the July 29, 2019 carjacking of M.W.'s Infiniti Q50.

The Defendant, in particular, participated in all of these events (including the June 12, 2019 carjacking resulting in the death of Taven Lowther described below).

The Defendant agrees that he knowingly and willfully became a member of a carjacking conspiracy with his co-defendants and that at least one member of the conspiracy committed an overt act to further the conspiracy. The Defendant also agrees that it was reasonably foreseeable to him that a victim could be murdered during the course of the conspiracy.

## III.  Aiding and Abetting a Carjacking Resulting in Death (Count 6)

On June 12, 2019, at about 4:30 p.m., S.A. drove a blue 2004 Acura MDX to Taven Lowther's apartment at 4418 Franconia Drive to get some pills. S.A. was outside of the driver's side of the car speaking to Lowther when a Honda Accord backed into a parking space directly across from them. The men noticed the car because the muffler dug into the concrete curb while backing up, before being pulled forward and parked. Four men exited the car, two of whom had

firearms. They approached S.A. and announced a robbery. S.A.'s car keys were still in the ignition and the car was running. S.A. ran from the scene, but Lowther remained, resisted the robbers' commands, and was shot several times by one of the robbers. Lowther subsequently died from his injuries. S.A. returned to the scene to discover that his car was gone, as was Lowther's body. All that remained at the scene was Lowther's shoes.

Witness testimony identified the Defendant, an adult co-conspirator, and two juveniles as the robbers. The Defendant drove the Honda Accord, which was stolen on June 9, 2019. The co-conspirator and two juveniles left the car armed with firearms, and the co-conspirator shot Lowther after he refused to give them his belongings. One of the juveniles stole S.A.'s Acura MDX while the others fled in the Honda Accord. Cell-site evidence put the Defendant and one of the juveniles in the area of the carjacking/murder before and after it occurred. Witness testimony, surveillance cameras, and cell-site evidence also establish that the Defendant and two juveniles stole the Honda Accord on June 9, 2019.

The Defendant agrees that he, another man, and the juveniles took S.A.'s Acura MDX by force or intimidation and with the intent to cause death or serious harm. He agrees that he aided and abetted the carjacking—specifically, that he knowingly associated himself with it and participated in it by doing some act to help it succeed. The Defendant also agrees that Lowther's death resulted from the co-conspirator's actions. S.A.'s Acura MDX is a motor vehicle that had been transported or shipped in interstate commerce before the carjacking because it was manufactured outside of Maryland.

SO STIPULATED:

Digitally signed by
PATRICIA MCLANE
Date: 2021.05.24
13:05:19 -04'00'

Patricia McLane
Brandon Moore
Assistant United States Attorneys

Karon Foster
Defendant

Stephen B. Mercer, Esq.
Counsel for Defendant