

U.S. Department of Justice

*United States Attorney
District of Maryland*

*Patricia McLane*
*Assistant United States Attorney*
*Patricia.McLane@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4942*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*

December 7, 2021

The Honorable Stephanie A. Gallagher
United States District Judge
District of Maryland
Edward A. Garmatz United States District Courthouse
101 W. Lombard Street
Baltimore, MD 21201

      Re:    Sentencing in *United States v. Karon Foster*
               Crim. No. SAG-19-0486

Dear Judge Gallagher:

      The Defendant, Karon Foster, is scheduled for sentencing on December 20, 2021 at 10:00 a.m. Three people lost their lives due to Foster's criminal activity and therefore, a sentence of **480 months**' imprisonment is sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a). This sentence is the top of the agreed-upon sentencing range agreed to by the parties in the Rule 11(c)(1)(B) plea agreement.

## I. BACKGROUND

      Foster is the lead defendant of a violent and deadly enterprise that committed over a dozen carjackings, non-fatal shootings, and at least three homicides during the summer of 2019 all for personal profit. The enterprise's purpose was to carjack and rob individuals throughout east and west Baltimore City for personal property and to sell and divide the proceeds of those robberies among enterprise members. The purpose was also to conceal their acts. The enterprise used the carjacked vehicles to commit other robberies to avoid immediate detection; they also used the carjacked cars for personal use and "loaned" them to associates of the enterprise for personal use. Foster ran the enterprise, deciding which members and associates would participate in the carjackings and robberies; additionally, Foster pawned and sold the personal property collected during the carjackings and robberies, and he doled out the proceeds to those who participated in the specific crime.

      Other core members of the enterprise include Rashaud Nesmith, Malik Evans, Demonte Kellum, and Christopher Santiago, a juvenile. The enterprise also used multiple associates including Jamai Wells and Daniel Williams, who either participated in the robberies or assisted

the defendants after the robberies by hiding evidence and vehicles. The members do not identify themselves as a traditional gang; the defendants do not have a name, motto, written rules, or national recognition. Rather, the defendants are a local group who terrorized Baltimore City through a series of carjackings and street robberies.

On June 12, 2019, four men carjacked S.A. in his 2004 navy Acura MDX in front of the apartment complex at 4418 Franconia Drive. One of the men shot and killed S.A.'s friend, Tavon Lowther, during the robbery. Ballistic evidence, surveillance video, and cell site information would eventually lead ATF agents to connect that crime to at least seven suspects and approximately 24 acts of violence, beginning with a carjacking in April 2019, and ending with the non-fatal shooting of an off-duty Baltimore City police officer on August 8, 2019. Foster's efforts to coordinate the crimes and target carjacking and robbery victims, make him responsible for the death of Lowther, Devon Chavis, and Kendrick Sharpe.

## II. UNITED STATES SENTENCING GUIDELINES

The Government disagrees with two of the Sentencing Guidelines calculations in the PSR. First, the Government believes Foster deserves an additional two-levels for his role as the leader of the enterprise pursuant to U.S.S.G. § 3B1.1(c). PSR ¶ 107. When applying this enhancement, the Court considers whether the defendant "exercised management responsibility over the property, assets, or activities of [the] criminal organization." U.S.S.G. § 3B1.1, Commentary, Application Note 2. Additional factors include the exercise of decision-making authority, the recruitment of accomplices, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, Commentary, Application Note 4. Several of those factors are present here. Foster drove other enterprise members to the various carjackings and robberies, ordering them out of the car to commit the crimes. He organized these crimes, recruited other participants, and exercised a degree of control over what the participants did. Witnesses would have testified at trial that Foster supplied the enterprise with the guns used in these crimes. Foster also took the lead in pawning stolen property and distributing to those enterprise members and associates who participated in the specific crimes. In those ways, he was responsible for many of the enterprise's weapons, activities, and proceeds, buttressing his leadership role.

Second, the Government believes a second two-level addition is warranted pursuant to U.S.S.G. § 3B1.4, because Foster used at least one juvenile during the crime scenes. PSR ¶ 105. This enhancement applies if the defendant directed, commanded, encouraged, intimidated, counseled, trained, procured, recruited, or solicited a person under 18 years old to commit the offense. U.S.S.G. § 3B1.4, Commentary, Application Note 1. Santiago was 17 when the enterprise used him to commit several of the carjackings and the murder of Lowther and Sharpe. Foster knew Santiago's age; they lived together prior to the crime spree.

Therefore, the Government believes the combined adjusted offense level is 51, not 49. PSR ¶ 113. Foster is entitled to a two-level decrease based on his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a); in addition, the Government shall make a motion under U.S.S.G. § 3E1.1(b) further reducing Foster's guidelines by one level. PSR ¶¶ 115, 116. The Government

calculation of Foster's total offense level is 48. However, this is an academic issue as the guidelines treat any total offense level more than 43, as a level 43. PSR ¶ 117.

The Government agrees with the Criminal History calculation set forth in the PSR, which concludes that Foster is a criminal history category III. PSR ¶ 124. Foster's advisory guidelines range is life. The parties agree however, that a variant sentencing range of 360-480 months' incarceration sufficient but not greater than necessary to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

### III. THE RELEVANT SECTION 3553(a) FACTORS

The factors set forth in Title 18, United States Code, Section 3553(a) include: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among Defendants involved in similar conduct who have similar records. 18 U.S.C. § 3553(a).

A sentence of 480 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing under § 3553(a). Foster and his co-defendants planned and carried out a series of armed carjackings and robberies without regard to the victims' or the public's safety. This complete and utter lack of regard resulting the death of three completely innocent men. Lowther, Chavis, and Sharpe's sole fault was possessing property wanted by Foster. Foster sent several of his associates to violently take what was not his. As a result, Lowther was shot dead in the parking lot of his apartment; Chavis was gunned down after arriving home from a work trip in Miami; and Sharpe sat in his car talking to a friend when attacked by Foster and his enterprise.

A very significant period of incarceration is necessary to provide just punishment, afford adequate deterrence, and protect the public. The Government believes this sentence is significant but not greater than necessary.

**A. Nature and Circumstances of the Offense, the Seriousness of the Offense, and the Need to Protect the Public from Further Crimes of the Defendant**

A 480-month sentence accounts for the fact that the crimes were heinous and resulted in several people losing their lives. Foster and the other enterprise members went on a string of senseless violence over a short span of time, traumatizing their victims and their families. Nine carjackings, three armed robberies, two attempted armed robberies, one non-fatal shooting, and three deaths.

3

Taven Lowther was 29 years old. He was in his own parking lot, laughing and catching up with a friend. They were talking about how he had just grown out his beard. The police found him in the parking lot, lying facedown, suffering from multiple gunshot wounds. They took him to the hospital, where he died. A few months later, Taven's brother was killed in the same neighborhood. "I asked God what I did to deserve this," Taven's father told the media after their deaths. "What did I do to deserve that you took my boys less than four months apart?"

Devon Chavis turned 28 years old just six days before he died. His friends described him as "outstanding" and "the best." "Always a happy guy." He was a barber who was growing his business and had amassed tens of thousands of followers on social media. He had just come home from a birthday trip in Miami, eager to celebrate with his friends, when the members of the enterprise shot him multiple times in his stomach. Shortly before his death, Devon posted on Instagram, "I appreciate this birthday so much because hardest thing in life right now is trying to stay alive. . . . God bless you and be safe." He left behind a two-year-old daughter.

Kendrick Sharpe was 48 years old and a father of five. Kendrick served in the military and graduated from the Baltimore School for the Arts. "He wanted to do right, provide for his family and give something of himself to the community through his art," a friend told reporters shortly after his death. According to his family, one of the last things Kendrick did before he died was buy a homeless man some clothes. He had been working on his own clothing line and was planning a launch party for his birthday. The launch party never happened. Kendrick was shot multiple times outside his car, shortly before his birthday. Police performed CPR on scene to no avail. He died soon after at the hospital.

I.C. was a 22-year veteran of a local police department. He had been out on his lawn talking to a neighbor while off duty when he was shot multiple times. I.C. told the shooters he was a police officer and begged for his life. The shooter did not care; in fact, the shooter stole I.C.'s Baltimore City Police Department issued firearm. I.C. was rushed to Shock Trauma and placed on life support. Thankfully, he survived, but he is paralyzed and now requires a wheelchair to move.

The recommended sentence accounts for the pain, loss, and tragedy that the enterprise left in its wake.

### B. History and Characteristics of the Offender

Clearly Foster's modus operandi is stealing property from others. Granted, Foster does not come from a place of means, but that does not justify the violent way he and his co-defendants tried to better themselves. Rather than getting a job, a degree, a legal source of income, Foster stole money and cars from others, and did so armed with his friends and firearms.

And this crime spree is not Foster's first criminal activity. The PSR outlines two prior convictions in 2017 that mirror Foster's crimes during the summer of 2019. PSR ¶¶ 120, 121. The facts of both convictions are eerily like the facts in the instant case. Foster is a serial carjacker/robber with no regard for anyone's safety. Foster was on probation for an armed robbery

4

at the time of this crime spree, and clearly a long period of incarceration is warranted to protect the public from Foster's proclivities.

Admittedly, the Government knows Foster lacks a support networks that favors education over criminal activity. Foster is not unlike many other residents of Baltimore City. However, he chose to lean into his life of crime, rather than asking for help to better himself. As a result, Foster must now face the consequences of his choices.

### C. The Need to Afford Adequate Deterrence.

Taking deterrence into account, a 480-month sentence is the appropriate sentence in this case. Foster has not served a significant period of prison time prior to his arrest in this matter. This significant amount of incarceration is warranted because of the seriousness of the crime he admits to committing.

Further, imposing a 480-month sentence promotes general deterrence while not being greater than necessary. This sentence tells others that if you take someone's car or property wielding a firearm, or if you take someone's life, you will spend a significant amount of time behind bars. Under all these circumstances, a 480-month sentence is the appropriate sentence in this case to reflect Foster's history and characteristics and to afford adequate deterrence.

## IV. CONCLUSION

For these reasons, the Government respectfully submits that 480 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing under § 3553(a).

    Very truly yours,

    Erek L. Barron
    United States Attorney

    Patricia McLane
    Brandon Moore
    Assistant United States Attorneys

cc: counsel of record